Dorothy VAUGHN and Josephine Sanchez Johnson, Plaintiffs,

v.

MOBIL OIL CORPORATION, Defendant.

No. 86 Civ. 5257 (JMW).

United States District Court, S.D. New York.

March 17, 1989.

David B. Goldin, Vladeck, Walman, Elias & Engelhard, P.C., New York City, for plaintiffs.

Daniel F. Murphy, Michael T. McGrath, James E. McGrath, Putney, Twombly, Hall & Hirson, New York City, for defendant.

## OPINION AND ORDER

WALKER, District Judge:

Plaintiffs Dorothy Vaughn ("Vaughn") and Josephine Sanchez Johnson ("Sanchez Johnson") allege that Mobil Oil Corporation ("Mobil") discriminated against them on account of their race and age, in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and the New York Human Rights Law § 296 subd. 1(a). Defendant Mobil moves for summary judgment, requesting that this Court: (1) dismiss plaintiffs' complaint on the grounds that plaintiffs have failed to sustain their burdens of proof and/or on the ground that the claims asserted therein have been released and discharged; and (2) award damages to Mobil for plaintiffs' breach of contract. For the reasons set forth below, this Court denies defendant's motion in its entirety.

### I. *Background*

In considering a summary judgment motion all reasonable inferences must be drawn in favor of the nonmoving party and all ambiguities and differences must be resolved to that party's benefit. *Patrick v. LaFerve,* 745 F.2d 153, 161 (2d Cir.1984); *Poklitar v. CBS, Inc.,* 652 F.Supp. 1023 (S.D.N.Y.1987). Thus, this Court takes the facts from parties' submissions in the light most favorable to the nonmoving party, which in this case is the plaintiffs.

### A. Mobil's Reorganization and Termination of Plaintiffs' Employment

Plaintiffs Vaughn and Sanchez Johnson were employed by defendant at its corporate headquarters until November 30, 1984. Both Vaughn and Sanchez Johnson are black women, aged 57 and 61 respectively when the cause of action arose. Defendant Mobil is a corporation engaged in all aspects of the petroleum industry.

As a result of economic dislocations occurring in the petroleum industry in the late 1970s and early 1980s, Mobil decided to consolidate its personnel. This type of reorganization is commonly referred to as a reduction-in-force. Mobil transferred large numbers of employees to a different locale, reduced external recruitment and implemented a comprehensive cost containment program. To facilitate this internal restructuring, in March of 1983 Mobil undertook an Administrative and General Study ("A & G"). This study included a detailed comparison of the organizational structures of Mobil and three of its competitors. The study also expanded upon cost containment methods and suggested ways in which each department could be streamlined without disrupting the level of service. In conjunction with this effort, Mobil merged its Personnel Development Unit ("PDU") with its Employment Office. That merger led to the present suit.

Prior to and immediately after the Merger, Vaughn was the supervisor of the Employment Office, an office primarily concerned with external recruiting. Vaughn was responsible for supervising the staff,

conducting external recruiting, coordinating and monitoring Resource Group participants, and directing and participating in community outreach programs. Sanchez Johnson was a Placement Representative in the same department and was responsible for external recruiting through employment agencies and community organizations, and assistance in the Summer Job Program and the Co-op Program. The following chart represents the Employment Office as it existed prior to the merger:

VAUGHN (b. 1927) [1]
Supervisor, Employment Office

| SANCHEZ JOHNSON (b. 1923) Placement Rep. | CRITCHLEY JOHNSON (b. 1958) Personnel Services Admin. | GODINO (b. 1941) Admin. Assistant |

In contrast to the Employment Department's focus upon external placement, the PDU's primary responsibility was internal placement through promotions and transfers. The following chart represents the PDU as it existed prior to the merger:

BLICKSTEIN (b. 1932)
Manager, Personnel Development Unit

| RUSSI (b. 1943) Personnel Dev. | MALONE (b. 1951) Personnel Dev. | TAVIANINI (b. 1937) Admin. Assistant |

When the two departments were merged in March of 1984, the positions occupied by Thomas Malone, a white male, aged 32, and Mary Tavianini, a white female, aged 46, were eliminated. Malone was given other employment by Mobil while Tavianini left the defendant's employ. The duties of the six remaining employees remained essentially unchanged.

Also in the spring of 1984, Jennie Blickstein, manager of the merged department, was instructed by her immediate supervisor Robert Lauchner to determine if further reductions were possible. Blickstein recommended that the positions held by plaintiffs be eliminated. Having so concluded, Blickstein analyzed the strengths and weaknesses of each of candidate. Blickstein Dep. at 42.[2] Blickstein ranked the candidates—first through fifth—in accordance with their suitability for the remaining jobs. In addition, Blickstein utilized a "placement summary," a ready list of replacements of potential replacements for vacancies.[3] Among the relevant infor-

1. The notation "b." represents date of birth.

2. References throughout are as follows: Deposition ("Dep."); Complaint ("Com."); Affidavit ("Aff."); Defendant's Memorandum ("D. Mem."); Plaintiffs Memorandum ("P. Mem.").

3. Plaintiffs point to a contradiction between two of defendant's witnesses as to when this document was created. Blickstein testified that she ranked the candidates before the decision to discharge plaintiffs was made. It can be inferred from Lauchner's testimony, however, that the document was prepared just before that decision was implemented—after consultation with defendant's attorney. Blickstein Dep. at 39, Lauchner Dep. at 123–125.

mation set forth in that listed was the ages of all department employees.

On September 4, 1988, plaintiffs were advised that their positions would be eliminated as of November 30, 1984. Mobil officers told plaintiffs that efforts would be made to place them in other positions within Mobil, but that if those efforts were unsuccessful, their employment would terminate as of November 30, 1984.

Mobil did not successfully locate other positions within the company for plaintiffs. Vaughn was considered for the position of Supervisor, Clerical Services, but that position was given to another candidate who had superior qualifications and experience, a fact which Vaughn does not dispute. Vaughn was offered but refused to accept an eight month position with an independent organization which places minority students in corporations. Sanchez Johnson was neither considered for, nor offered, another job within Mobil.

On November 26, 1984 and October 29, 1984, respectfully, Vaughn and Sanchez Johnson accepted Mobil's standard early retirement package of benefits for employees who were terminated pursuant to a reduction-in-force. In addition, they signed a standard pre-printed form which stated:

> I further understand that these special early retirement allowances can only be made upon my representation and agreement (a) that I have no claim of any kind against Mobil, (b) that I will not make or authorize a claim of any kind against Mobil as my employer arising during the period I was employed by Mobil and (c) that my election of early retirement is voluntary and of my own choice. Upon any breach of the foregoing representations and agreements, I understand that I will forfeit all future payments of such special allowances and I agree to repay

the amount of any payments made by Mobil.

Prior to signing this form, plaintiffs expressed concern about the language to employees in Mobil's Employee Benefits Department. They were allegedly reassured that the form was a bureaucratic necessity, that it had no legal effect and that a failure to sign it would mean a forfeiture of all their already guaranteed retirement benefits.

Shortly after plaintiffs' release, Blickstein, a black woman born in 1932, voluntarily retired, leaving the merged department with only younger white women.

### B. Administrative Filings

On November 7, 1985, Vaughn and Sanchez Johnson filed complaints with the New York State Division of Human Rights (the "State Division") alleging that Mobil had discriminated against them on the basis of their race, age, and sex, in violation of the New York Human Rights Law. Mobil denied plaintiffs' allegations and maintained that the complaints were time barred because they had not been filed within one year of the alleged unlawful discriminatory practice.

In response, plaintiffs requested that the State Division dismiss their complaints for administrative convenience under Section 297 of the New York Human Rights Law. The State Division granted plaintiffs' request.

### C. The Instant Litigation

In July, 1986, plaintiffs filed the instant complaint. This complaint sets forth two claims: (1) Mobil violated the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 [4] by "intentionally terminat[ing] the employment of plaintiffs and fail[ing] to place them in other positions within Mobil because of their race." Com. ¶¶ 16–17, and

---

**4.** Section 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same rights in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

Section 1981 creates a private right of action to remedy racial discrimination. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

(2); Mobil discriminated against plaintiffs in violation of Section 296 subd. 1(a) of the New York Human Rights Law [5] by "intentionally terminat[ing] the employment of plaintiffs and fail[ing] to place them in other positions within Mobil because of their age." Com. ¶¶ 18–19.

## II. *Discussion*

A court may grant summary judgment only where "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). A genuine issue exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where, as here, a non-movant bears the ultimate burden to prove at trial that a defendant discriminated, she may defeat a summary judgment motion "by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial." *Montana v. First Federal Savings and Loan,* 869 F.2d 100, 103 (2d Cir.1989), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment is ordinarily inappropriate where intent and state of mind are at issue. *Meiri v. Dacon,* 759 F.2d 989, 997–98 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984).

Thus, the inquiry to be performed "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Having performed such an inquiry, this Court finds that genuine issues of fact exist in this case and, thus, summary judgment is inappropriate.

### A. Age and Race Discrimination Claims

Plaintiffs present both race discrimination claims under Section 1981, and age discrimination claims under the New York Human Rights Law.[6] An age discrimination claim under the New York Human Rights Law is analogous to an action under the Age in Discrimination in Employment Act ("ADEA"),[7] and thus the same elements and burdens of proof apply. *Miller Brewing Co. v. State Division of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985). In examining both ADEA and Section 1981 cases, courts have applied the well known three-step analysis for Title VII cases established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See, e.g., Martin v. Citibank,* 762 F.2d 212 (2d Cir.1985) (Section 1981 case); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–920 (2d Cir.1981) (ADEA case).

Under this analysis, the plaintiff first has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employment decision. Third, should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but a pretext for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093; *McDon-*

---

**5.** This section provides as follows:
  1. It shall be an unlawful discriminatory practice:
  (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

**6.** Plaintiffs invoke this Court's pendent jurisdiction under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**7.** The ADEA prohibits any employer from taking action "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age...." 29 U.S.C. § 623.

*nell Douglas,* 411 U.S. at 802–804, 93 S.Ct. at 1825.

### 1. *The Prima Facie Case*

In *McDonnell Douglas,* the Supreme Court stated that plaintiffs could establish a prima facie case upon a showing that: (1) they belong to a racial minority; (2) they applied and were qualified for jobs for which the employer was seeking applicants; (3) despite their qualifications, they were rejected; and (4) after their rejection, the position remained opened and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. The Court expressly noted that although this test provides a useful yardstick, it "is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

The Second Circuit recently clarified how courts should apply the *McDonnell Douglas* test in reduction-in-force cases. In *Montana v. First Federal Savings and Loan,* 869 F.2d 100, 104–05 (2d Cir.1989), the Second Circuit "expressly [held] what [its] previous decisions have clearly implied: [8] that in a reduction-in-force case or a structural reorganization case, a discharged employee who seeks under *McDonnell Douglas* to establish a prima facie case, need not show that he was replaced by a younger, newly hired employee; it is sufficient that the discharge occur in circumstances giving rise to an inference of discrimination." [9]

■ The Second Circuit's decision in *Montana* thus implicitly endorsed this Court's previous analysis of how *McDon-*

*nell Douglas* is to be applied in a reduction-in-force context. In *Poklitar v. CBS, Inc.,* 652 F.Supp. 1023, this Court held that in order to make out a *prima facie* case in a reduction-in-force case, plaintiffs must establish that: (1) they are within the protected class; (2) they were qualified to assume another position; (3) and that some evidence exists which would allow a finder of fact to reasonably find discrimination against plaintiffs. *Id.* at 1026, *citing Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *E.E.O.C. v. Trans World Airlines, Inc.,* 544 F.Supp. 1187, 1218 (S.D.N.Y. 1982).

■ The first two parts of this initial inquiry are easily met. The plaintiffs clearly are of the race and age the statutes seek to protect.[10] Plaintiffs also have established the second element necessary for a *prima facie* case since defendant concedes that plaintiffs were qualified to assume other positions. D. Mem. at 30. Thus, plaintiffs' burden of establishing a prima facie case turns on their ability to present evidence upon which a fact finder may reasonably rely in finding for plaintiffs on the issue of discrimination.

■ There are several circumstances surrounding plaintiffs' discharge which raise a permissible inference of age discrimination. First, the Court notes that there is evidence that plaintiffs were treated differently from similarly situated employees who are not members of the protected class. A court may find evidence of discrimination where, as here, an employer

---

**8.** For example, in *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 920–21 (2d Cir.1981), the Second Circuit held that the *McDonnell Douglas* formula is not the only means of raising an inference of age discrimination. In that case, the plaintiff, whose job was eliminated upon his discharge, failed to show that a new employee took over his job after discharge or that the position was left open. However, he was permitted to show direct evidence, statistical evidence, circumstantial evidence which could support an inference of age discrimination.

**9.** Other circuits have likewise rejected the argument that a plaintiff in a reduction-in-force or

structural reorganization case must show that he was replaced by a newly hired person. *See Oxman v. WLS–TV,* 846 F.2d 448, 453–56 (7th Cir.1988); *Coburn v. Pan American World Airways, Inc.,* 711 F.2d 339, 342–43 (D.C.Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *Coker v. Amco Oil Co.,* 709 F.2d 1433, 1438 (11th Cir.1983).

**10.** Although the New York statute does not delineate a protected age group, it is reasonable to assume that those between the ages of 40 and 70 are likely candidates since the ADEA applies to this group.

locates new positions for employees who are not members of a protected class and fails to do the same for employees who are members of a protected class. *See e.g., Oxman v. WLS–TV*, 846 F.2d 448, 454 (7th Cir.1988); *Poklitar v. CBS, Inc.*, 652 F.Supp. at 1027; *Deutsch v. Carl Zeiss, Inc.*, 529 F.Supp. 215 (S.D.N.Y.1981).

In this case, a department which contained three white women ages 41, 43 and 26, and three black women, ages 61, 57 and 52 was ultimately staffed by the three younger white women.[11] This one-sided shift in personnel, though not dispositive, strengthens plaintiffs' claims. As one court noted, "Although replacement by someone younger, without more, will not give rise to an inference of age discrimination, it has been noted that a substantial difference in the ages may be circumstantial evidence that gives rise to that inference." *Maxfield v. Sinclair International*, 766 F.2d 788, 792 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986) (quoted by *Poklitar v. CBS, Inc.*, 652 F.Supp. at 1028.).

Plaintiffs also raise several issues of material fact regarding Mobil's method of ranking and retaining employees. In particular, there is evidence that the rankings upon which personnel decisions were allegedly to be made were not followed. For example, Josephine Godino, ranked fourth for the position of Administrative Assistant, was ultimately offered that position instead of Vaughn who was ranked second. Both Lauchner and Blickstein acknowledged in their depositions that Vaughn and Sanchez Johnson were better qualified for that position than Godino, despite Sanchez Johnson's ranking as fifth. Lauchner Dep. at 82; Blickstein Dep. at 59. Nevertheless, the position was awarded to the substantially younger white woman.

Mobil attempts to justify its actions by asserting that neither plaintiff would have wanted the position of administrative assistant. But Mobil never actually asked either plaintiff whether they would accept the position. Blickstein Dep. at 81. Indeed, both plaintiffs have stated that if they had been informed that the position of administrative assistant was available, as an alternative to termination of their employment with Mobil, they would have seriously considered accepting that position. Vaughn Aff. ¶ 7; Sanchez Johnson Aff. ¶ 8. Blickstein's assessment of Vaughn's capabilities as "overqualified,"[12] only supports Vaughn's contention that she was, without question, capable of assuming another position.

To cast further doubt upon defendant's method of discharging employees, plaintiffs raise a question of fact as to when the ranking system was actually deployed. Based on Lauchner's deposition testimony, plaintiffs raise the possibility that documentation of Mobil's neutral considerations were prepared after the fact and on the advice of counsel. Lauchner Dep. at 122–125. Furthermore, Mobil's practice of listing the ages of all employees on its "placement summary" used in its reorganization, viewed in conjunction with other evidence, may corroborate a finding of age discrimination. This practice, at the very least, permits an inference that plaintiffs' ages were considered relevant in reorganization decisions.

Defendant's argument for summary judgment erroneously treats each piece of evidence offered by plaintiff to prove discrimination in isolation, rather than addressing the cumulative impact of the evidence. When considered in its entirety, the record contains sufficient ambiguities to prevent summary judgment on plaintiffs' prima facie case of age and race discrimination.

### 2. *Pretext*

■ Having found sufficient factual issues to sustain plaintiffs' prima facie case, this Court now examines whether defendant has offered a legitimate, nondiscriminatory reason for the employees' rejection. Defendant contends that plaintiffs were released because the function which they per-

---

**11.** Blickstein was discharged approximately a year after plaintiffs. P. Mem. at 13.

**12.** Blickstein Dep. at 59.

formed—external recruitment—was no longer active enough to justify their employment. In demonstrating pretext, plaintiffs are not required to show that age was the only factor in Mobil's decision. *Hagelthorn v. Kennecott Corporation*, 710 F.2d 76, 82 (2nd Cir.1983). Nor are they required to show that defendant's proffered reason is false, but only "that its stated reason was not the only reason and that [their] age [or race] did make a difference." *Montana*, 869 F.2d at 105.[13] When viewed in the light most favorable to plaintiffs, plaintiffs' evidence is sufficient to defeat summary judgment.

■ Plaintiffs raise several factual issues which cast doubt on Mobil's otherwise legitimate business decision. Contrary to defendant's assertions, plaintiffs have offered evidence that they continued to be busy in their positions up until the time they were fired. Vaughn Aff. ¶ 6; Sanchez-Johnson Aff. ¶ 7. Moreover, the A & G study recommended that *four* people remain in the employment office, not *three*, and suggested that plaintiffs' positions *not* be eliminated. Lauchner Dep. at 33–37. From this evidence a reasonable fact finder could infer that, as of the time of the A & G study in 1984, plaintiffs were fully occupied. Defendant has not fully explained how its latter review could have concluded that plaintiffs' positions were expendable six months after a formal, comprehensive interview concluded the opposite.

Defendant suggests that plaintiffs' alleged performance problems contributed in part to its decision to terminate plaintiffs' employment. Blickstein Dep. at 53–55. This Court is not authorized to judge the wisdom of a corporation's legitimate business decisions. *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983). However, allusions to plaintiffs' work performance may represent nothing more than *ex post* justifications for person-

nel decisions resulting solely from plaintiffs' race or advanced age. Indeed, while Blickstein claimed to have had "difficulty in getting work out [from plaintiffs] on a timely basis" she could only recall one instance in which this was so and added without explanation that she "was sure there had been a good reason for it." Blickstein Dep. at 53–55. Plaintiffs have presented evidence that they had solid work records and have sworn that at no time had anyone at Mobil expressed any dissatisfaction with their work performance. Vaughn Aff. at ¶ 8; Sanchez Johnson Aff. ¶ 9.

In short, then, the question of whether defendant has produced an adequate business justification for terminating plaintiff raises issues of material fact which this Court cannot resolve in a summary judgment motion.

## B. The Release

■ Defendant claims that even if plaintiffs were able to satisfy their burden and preclude summary judgment they should not be allowed to proceed with their cause of action since they signed a release whose plain language absolves defendant from any and all liability. In response, plaintiffs allege that the waiver was not knowing and voluntary. This Court concludes that there are genuine issues of material fact as to whether the release was knowing and voluntary and defendant's counterclaim accordingly is denied.

■ Employees may release, waive or discharge their rights under an employment discrimination statute provided that they do so "knowingly and voluntarily." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974) (Title VII); *Trujillo v. State of Colorado*, 649 F.2d 823, 826–27 (10th Cir. 1981) (Section 1981). The criteria to determine whether a release is knowing and

---

**13.** In examining a jury charge given in an age discrimination case, the Second Circuit similarly stated that plaintiffs are "not required to show that age was the *principal* factor in the employer's decision ... [plaintiffs] are required to show only that the reason offered by [defen-

dant] were not its only reasons and that the age of [plaintiffs] 'made a difference' in its decision to implement the elective termination plan." *Paolillo v. Dresser Industries, Inc.*, 865 F.2d 37, 40 (2d Cir.1989).

voluntary are: 1) the plaintiff's education and business experience 2) the amount of time the plaintiff had access to the agreement prior to signing it 3) plaintiff's role in negotiating the terms of the release 4) the ambiguity of the release 5) whether plaintiff was counseled by an attorney prior to signing the release 6) whether the consideration offered in exchange for the release is greater than the amount of the benefits the plaintiff was already entitled to by contract or law. *E.E.O.C. v. American Express Publishing Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y.1988). *See also Paolillo v. Dresser Industries, Inc.*, 821 F.2d 81, 84 (2d Cir.1987).

In the case at bar several factors militate against the plaintiffs. Defendant contends, and no evidence to the contrary is offered, that plaintiffs had a copy of the release for three months prior to their signing it. In addition, the agreement is clearly worded and appears to require plaintiffs to waive their right to sue defendant, although no specific mention is made of race and age discrimination claims. Also, plaintiffs had the opportunity to consult an attorney.

Nevertheless, there are genuine issues of material fact as to several other factors that raise sufficient question as to the voluntariness of the agreement to preclude granting summary judgment. First, plaintiffs had no input as to the terms of the release. It does not appear that the terms were negotiated since the plaintiffs merely signed a printed form. Second, although plaintiffs could have retained an attorney, their attorney was not present when the release was signed. Third, plaintiffs state that they were advised by the defendants that the release was necessary to obtain any benefits and that the form was a mere bureaucratic formality of no legal significance. Vaughn Aff. ¶ 9; Sanchez Johnson Aff. ¶ 10. In light of these factors, plaintiffs raise sufficient genuine issues of material fact as to whether the release was voluntarily and knowingly signed to preclude summary judgment.

III. *Conclusion*

Accordingly, defendants' motion for summary judgment is denied in its entirety.

So ORDERED.