Nicholas FASANO, Plaintiff,

v.

**FLOUR CITY ARCHITECTURAL METALS, INC. and Armco, Inc., Defendants.**

No. 95 Civ. 2834 (NG).

United States District Court, E.D. New York.

Nov. 22, 1996.

---

Daniel T. Campbell, Floral Park, New York, for Plaintiff.

Douglas S. Zucker, Stanton, Hughes, Diana & Zucker, Florham Park, New Jersey, for Defendants.

## OPINION AND ORDER

GERSHON, District Judge:

Plaintiff Nicholas Fasano claims that the defendants terminated him from employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the New York Human Rights Law, N.Y.Exec.Law §§ 290 *et seq.* The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## FACTS

Unless otherwise indicated, the following facts are undisputed. Defendant Flour City Architectural Metals, Inc. ("Flour City") was at all times relevant to·this action primarily engaged in the manufacture and installation of the facade, or "curtain wall," of buildings and other structures. Flour City is an independent subsidiary of defendant Armco, Inc. For seventeen years prior to his discharge, Mr. Fasano worked as an estimator in the Estimating Department in Flour City's Glen Cove, New York facility. Flour City also maintained a facility in Johnson City, Tennessee.

An estimator's job is to examine architectural drawings and specifications in order to develop a projection of the quantities and costs required for the production and installation of curtain wall for particular construction projects. The defendants acknowledge that Mr. Fasano was qualified to be an estimator at the time of his discharge. Defendants' Brief at p. 8.

Immediately prior to Mr. Fasano's discharge, the Estimating Department at the Glen Cove facility consisted of a supervisor and four estimators:

| | Age | Date of Hire |
| --- | --- | --- |
| Philip Gambino (Supervisor) | 52 | 07/16/62 |
| William Dick | 41 | 06/27/88 |
| Nicholas Fasano | 60 | 12/06/76 |
| Edward Sidebotham | 41 | 01/10/83 |
| Al Wenskus | 50 | 02/28/83 |

The defendants contend that Mr. Fasano was discharged as part of a downsizing conducted by Flour City as a result of a decline experienced by the construction industry as a whole. They further assert that when this decline began in 1992, Flour City was not immediately affected because of a backlog of projects it was handling. Nevertheless, in the belief that the downturn would outlast the backlog, Flour City contends that it began to develop strategies to ensure that the firm would weather the changes in the industry. Specifically, it reached the conclusion that for some time into the future, the bulk of the firm's business would shift from contracts involving large structures to jobs involving smaller, standardized structures. In an effort to reduce firm costs, Flour City's president, Michael Russo, and his staff determined that a comprehensive downsizing of operations, which would include lay-offs, would be prudent.

Initially, in January 1994, the supervisor of the Estimating Department at the Glen Cove facility, Philip Gambino, received instructions to provide recommendations for eliminating positions in the department. Mr. Gambino, however, resisted taking any such action. As a result, his immediate supervisor, Thomas Kretschmer, Flour City's vice-president of sales and marketing, undertook the task. Mr. Kretschmer's termination decisions were reviewed and approved by Mr. Russo. The parties do not dispute that Mr. Fasano was terminated pursuant to Mr. Kretschmer's recommendation on March 2, 1994.

The defendants' position is that productivity considerations "received 100% of the weight" in the decision as to who should be terminated. Defendants' Answers to Plaintiff's First Set of Interrogatories at p. 2. Mr. Kretschmer states that he made an assessment of the relative productivity of the four estimators working under Mr. Gambino during the six-month period from September 1993 through February 1994 and that his review was based upon: 1) projects completed by each of the four estimators during the six-month period, 2) his own sales reports and 3) the Estimating Department's "log book", which records the name of each estimating assignment undertaken by the department, the estimator undertaking the assignment and the date that the assignment was completed.

Mr. Kretschmer explains his conclusion that Mr. Fasano and Mr. Wenskus should be terminated, and that Mr. Dick and Mr. Sidebotham should be retained, as follows:

I considered that both Wenskus and Fasano were slow and meticulous in preparing estimates and that each had experience in handling the large, complex type of projects the Company historically pursued. Given changes in the market and the absence of large projects on which to bid, I also considered the fact that the future of the industry generally, and Flour City specifically, was to focus on smaller projects such as corporate type centers, and that the estimates on these smaller projects required quick turnaround time and high volume.

Kretschmer Certification at ¶ 13.

Almost a year after the termination of Mr. Fasano and Mr. Wenskus, in February 1995, two more Glen Cove estimators, Mr. Sidebot-

ham and Donald Mazarowski [1], were also terminated. In April 1995, Mr. Gambino opted for early retirement. Several months later, Mr. Dick transferred to Flour City's Johnson City, Tennessee facility, leaving no estimators employed at Glen Cove.

In addition to challenging whether the defendants have offered enough proof that a general downsizing occurred, Mr. Fasano contends that the reasons proffered by the defendants for terminating him are a pretext for age discrimination. First, he notes that the sales reports have not been submitted to him and to the Court on this motion and therefore cannot be used to support summary judgment. Second, although there is no dispute as to the type of information recorded in the departmental log book, which is before the Court, Mr. Fasano argues that it is so inadequate as a measure of productivity that an inference is raised that its use was pretextual. He relies on evidence from two former co-employees.

Edward Sidebotham, one of the estimators, states that the log book is inaccurate as to who performed the curtain wall estimate for the Chrysler Corporation headquarters in Auburn Hills, Michigan, an assignment undertaken during the period under examination by Mr. Kretschmer. The log book reflects that the project was done by Mr. Sidebotham alone; according to Mr. Sidebotham, he actually performed the work in collaboration with Mr. Fasano. Sidebotham Affidavit at ¶ 6.

Philip Gambino, the Estimating Department supervisor, whom the defendants acknowledge to be the most knowledgeable person concerning the operations of the department, Defendants' Reply Brief at p. 25, testified that, for yet other reasons, the log book was useless as a measure of productivity. At his deposition, during the course of testimony regarding the measurement of estimator productivity, the following exchange took place:

Q. Wouldn't it have been easier just to say, well, let's just look at the number of jobs each estimator does each year and whoever does more jobs is the more productive?

A. No, you can't do that.

Q. Why not?

A. Simply because certain jobs are just straightforward, very simple, if you get a project like this, which is what they would call "ribbon windows", going around the building, something like this shouldn't take more than a day to complete a take-off on and maybe a day or two to price up. Whereas, there are other projects which are very complicated, with ins and outs going up the building, setbacks and so on. Those jobs are going to take more time.

Q. So, you never used the log book and merely counted the number of jobs and whoever had the most jobs considered them the best estimator?

A. No, you can't do that.

\* \* \* \* \* \*

A. Again, I think it would be foolish because of the nature of each project. And you can't go by quantity.

Gambino Deposition at pp. 25–26. Mr. Gambino also testified that the reason that the log book was kept was unrelated to the measurement of productivity:

Q. If you know, why was this log maintained?

A. It was just a matter of recordkeeping for each project that was bid and again, for the estimate number so that we had a file number on each project that was being bid.

Q. Was the log book used for any other purposes?

1. According to the defendants, Mr. Mazarowski was a glass estimator who had prior experience as a metal estimator. Glass estimating was performed in a different department at Glen Cove, and Mr. Mazarowski was transferred to the Estimating Department to do metal estimating when the former department was shut down as a result

of Flour City's downsizing. This transfer took place at some unspecified time after Mr. Fasano's termination. It is undisputed that Mr. Mazarowski was 47 years of age at the time of Mr. Fasano's termination and had been hired by Flour City on August 1, 1965.

A. No. I would say, it was basically for information, just for filing.

*Id.* at p. 16.

## DISCUSSION

### Summary Judgment Standards.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is the movant's burden to demonstrate the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 175, 90 S.Ct. 1598, 1618, 26 L.Ed.2d 142 (1970). A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Celotex v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2551–53, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553. The non-movant's "evidence . . . is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992) (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513).

### The ADEA and the New York Human Rights Law.

■ The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1985). The ADEA protects persons forty years of age or older. *Id.* at § 631(a) (1996 Supp.). The New York Human Rights Law affords similar protections. N.Y.Exec.Law § 296(1)(a) (McKinney 1993). Under both the ADEA and the New York Human Rights Law the ultimate question is whether an employer discriminated against an employee on account of that person's age. 29 U.S.C. § 623(a)(1); N.Y.Exec. Law § 296(1)(a). ADEA claims are subject to the three-step burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).[2] The identical analysis is applicable to claims under the New York Human Rights Law. *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 938–39, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985).

Under *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. Once the plaintiff has succeeded, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. *Id.* The burden at this phase is one of production rather than persuasion. *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). If the defendant carries this burden, the plaintiff must demonstrate that the reason proffered by the defendant is merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

■ With respect to the plaintiff's ultimate burden, the Supreme Court has mandated that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and*

---

**2.** *McDonnell Douglas* is a decision under Title VII of the Civil Rights Act of 1964. However, the Court of Appeals for the Second Circuit has long applied the *McDonnell Douglas* analysis to ADEA claims because "the ADEA was derived *in haec verba* from Title VII." *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 920 (2d Cir.1981) (citation omitted). While the Supreme Court has never explicitly ruled on the point, it has acknowledged that all of the Circuits are in accord with our Circuit. *See O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, —————— & n. 2, 116 S.Ct. 1307, 1309–1310 & n. 2, 134 L.Ed.2d 433 (1996).

that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in original). The Court of Appeals for the Second Circuit counsels that "(w)hat this [holding of *St. Mary's* ] means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1225 (2d Cir.1994) (emphasis in original). The plaintiff need not raise an issue of fact as to whether "age was the only factor in the employer's discharge decision, but that age was a determinative factor." *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 317 (2d Cir.1992) (citation omitted).

### A. Fasano's *Prima Facie* Case.

The Court of Appeals for the Second Circuit has recently reiterated the elements of an ADEA plaintiff's initial burden:

> A *prima facie* case of discharge resulting from age discrimination is established if the plaintiff shows, through direct or circumstantial evidence, that: 1) she was within the protected age group, 2) she was qualified for the position, 3) she was discharged, and 4) the discharge occurred under circumstances giving rise to an inference of discrimination.

*Burger v. New York Inst. of Technology,* 94 F.3d 830, 833 (2d Cir.1996).

■ The defendants concede for the purpose of this motion that Mr. Fasano has made out a *prima facie* case. Defendants' Brief at p. 15. Clearly he has done so. At sixty years of age at the time of his discharge, Mr. Fasano is in the protected class, and it is undisputed that he was qualified as an estimator and was discharged by Flour City in March 1994.[3]

■ As to the discharge having taken place under circumstances allowing for an inference of discrimination, the relevant inquiry is "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 38 (2d Cir.1994) (Title VII case). Such an inference could arise from the following: 1) the two oldest estimators at the Glen Cove facility were discharged on March 4, 1994; 2) a younger estimator, Mr. Mazarowski, was transferred to the Estimating Department after Mr. Fasano's discharge, albeit for a brief time; and 3) the youngest estimator at Glen Cove, Mr. Dick, was the only Glen Cove estimator ultimately retained by Flour City. *See, e.g., Maresco v. Evans Chemetics Div. of W.R. Grace & Co.,* 964 F.2d 106, 113 (2d Cir.1992) (decision to terminate two of three oldest employees in department gives rise to an inference of discrimination sufficient to defeat summary judgment); *Vaughn v. Mobil Oil Corp.,* 708 F.Supp. 595, 600–01 (S.D.N.Y.1989) (inference of discrimination may arise when employer locates new positions for younger, but not older, employees during corporate reorganization).

### B. Flour City's Burden of Production.

■ The defendants have met their burden by proffering that Mr. Fasano was legitimately discharged as part of a necessary reduction in force. The defendants correctly note that the ADEA "does not forbid essential corporate belt-tightening having no discriminatory motivation." *Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (2d Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983).

**3.** That *all* of the estimators at Glen Cove were more than forty years of age at the time of Mr. Fasano's discharge does not defeat this showing. As the Supreme Court has recently held, the ADEA "does not ban discrimination because [employees] are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*" *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310 (emphasis in original).

### C. Fasano's Evidence of Pretext.

 Although a court must be cautious not to substitute its judgment for the business expertise of defendants with respect to the best interests of their enterprise, "even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995) (citation omitted). Thus, the issue is not whether the decision to terminate Mr. Fasano was wise, but whether age was a determinative factor in the decision to discharge him.

 "The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749. Thus, to defeat summary judgment, Mr. Fasano must establish that a genuine issue of fact exists as to the believability of the defendants' explanation for his discharge and as to whether it was a pretext for age discrimination. Bearing in mind that all inferences must be judged in the light most favorable to him, I find that Mr. Fasano has demonstrated through his challenge to two of the three bases upon which the defendants purportedly relied in determining that he should be discharged that a genuine issue of fact indeed exists.

#### 1. The Sales Reports.

As Mr. Fasano points out, there is no way for the Court to evaluate the use of Mr. Kretschmer's sales reports as a measure of productivity because the defendants have failed to submit these reports on this motion. Indeed, nowhere in their papers do the defendants discuss what information these reports contain and how they indicate the relative productivity of the Glen Cove estimators.

#### 2. The Log Book.

As discussed above, Mr. Fasano has presented evidence from two co-workers that the Estimating Department log book could not reasonably be used to measure the relative productivity of Mr. Fasano and his co-workers. According to Mr. Sidebotham, the log book is inaccurate with respect to assigning individual credit for the completion of assignments. Mr. Sidebotham specifically identifies a particular job in which he is listed as the estimator in the log book when in fact Mr. Fasano collaborated with him on the job and is not so listed. The defendants make no effort to rebut Mr. Sidebotham's affidavit, but offer only the plainly incorrect assertion that "the fact that estimators do more tasks than are listed in the log book is not material to resolution of the legal issues before the Court." Defendants' Reply Brief at p. 24.

Even more damaging to the defendants' claim that its goal was to eliminate the least productive employees is the testimony of Mr. Gambino, the Estimating Department supervisor, who is acknowledged by the defendants to be the most knowledgeable person about the department's operations. According to Mr. Gambino, some jobs are complicated and some simple, and comparing the number of jobs each estimator did, as a way to measure their relative productivity, is not possible. As he put it, "I think it would be foolish because of the nature of each project. And you can't go by quantity." Gambino Deposition at p. 26.

The defendants do not dispute that the time reasonably necessary for completion of individual curtain wall estimation jobs varies. Defendants' Responses to Plaintiff's First Set of Interrogatories at p. 3. Yet, the defendants relied on the number of jobs completed by each estimator, as set forth in the log book. *Id.* ("A review of that log indicates that plaintiff had the lowest annual productivity (*he performed the least number of estimating jobs*) of any estimator....") (emphasis supplied). While a straight numerical comparison might be an appropriate way to evaluate the productivity of assembly line workers who perform identical repetitive tasks, Mr. Gambino's testimony raises an issue of fact as to whether, if the defendants were indeed concerned about productivity, they would have used such a method here.

#### 3. Mr. Kretschmer's Assessment.

 While Mr. Kretschmer also employed his subjective judgment to conclude that Mr. Fasano was the least productive estimator at Glen Cove, *standing alone,* Mr. Kretschmer's subjective determination raises

the issue of his intent with respect to the productivity analysis. Of course, "(a) trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." *Gallo,* 22 F.3d at 1224. In light of the issues of fact presented as to the two objective bases—the sales records and the log book—upon which Mr. Kretschmer relied, the defendants cannot avoid the defeat of their motion by relying upon his subjective judgment alone.

## CONCLUSION

"A grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor." *Viola v. Philips Medical Systems of N. America,* 42 F.3d 712, 716 (2d Cir.1994). The evidence Mr. Fasano has presented raises an inference that the method pursuant to which the defendants profess to have determined that he should be discharged was pretextual.[4] This evidence, when coupled with his satisfaction of the elements of a *prima facie* case, *supra* at pp. 516–518, "will permit the trier of fact to infer the ultimate fact of discrimination." *St. Mary's,* 509 U.S. at 511, 113 S.Ct. at 2749. Summary judgment is therefore unwarranted.

The defendants' motion for summary judgment is denied. The parties are directed to appear for a pretrial conference on December 20, 1996 at 3:30 p.m.

**SO ORDERED.**

---

4. Mr. Fasano has attempted to raise other issues of fact, especially with respect to the defendants' alleged hiring of other estimators subsequent to his discharge, and regarding an alleged policy of transferring employees from Glen Cove to Flour City's Johnson City, Tennessee facility. Having determined that Mr. Fasano has raised a genuine issue of fact with respect to the pretextual nature of the method that the defendants profess was utilized in determining that he should be terminated, there is no need to consider these additional challenges to summary judgment.

In addition, Mr. Fasano has raised allegations concerning a meeting he and his attorney had with an officer of Flour City shortly before the filing of the complaint in this action. The defendants have filed a motion seeking to have evidence concerning this meeting declared inadmissible. Since the evidence concerning the meeting has not been relied upon in the decision to deny summary judgment, the question of its admissibility will be decided in connection with the trial.