**Eugene F. MARESCO, Plaintiff–Appellant,**

**v.**

**EVANS CHEMETICS, DIV. of W.R. GRACE & CO., Defendant–Appellee.**

**No. 344, Docket 91–7610.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1991.

Decided May 8, 1992.

Eugene Prosnitz, New York City, for plaintiff-appellant.

Joseph D. Luksch, New York City (Epstein, Becker & Green, of counsel), for defendant-appellee.

Before: MINER and MAHONEY, Circuit Judges, and McKENNA,* District Judge.

MAHONEY, Circuit Judge:

Plaintiff-appellant Eugene F. Maresco appeals from a judgment of the United States District Court for the Southern District of New York, John S. Martin, Jr., *Judge*, entered May 29, 1991 that granted the motion for summary judgment of defendant-appellee Evans Chemetics ("Evans"), a division of W.R. Grace & Co. ("Grace"), and denied Maresco's cross-motion for summary judgment, on Maresco's claim that Evans discharged him in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 (1988) *et seq.* The district court concluded that Maresco had failed to establish a triable issue of fact that: (1) his discharge occurred under circumstances that gave rise to an inference of age discrimination, or (2) the reasons that Evans articulated

for Maresco's discharge were a pretext for age discrimination. Maresco also appeals from an order entered November 27, 1990 in which the district court confirmed a magistrate judge's memorandum and order denying a request by Maresco for additional discovery.

Concluding that Maresco established triable issues of fact as to Evans' liability under the ADEA, we reverse and remand.

## BACKGROUND

### A. *The Events at Issue.*

Maresco was hired by Evans in 1967 as a senior clerk. Evans was wholly owned at that time by Ralph Evans, Jr., and was located in New York City. In or about January 1970, Evans relocated to Darien, Connecticut. Maresco accompanied Evans to Darien, continuing to perform as a senior clerk or junior accountant until 1974, when he was promoted to the position of staff accountant. In or about December 1978, Evans was acquired by Grace. Evans then became part of Grace's Organic Chemicals Division (the "Division"), which had offices in Nashua, New Hampshire and Lexington, Massachusetts, as well as the former Evans office in Darien. In 1982, Maresco was promoted to the position of credit manager. This position included minor supervisory responsibilities, in addition to the performance of general corporate accounting functions.

In mid–1986, Grace decided to shut down the Darien office. The accounting functions of the Darien office were transferred to Lexington, and the office's other functions were transferred to other units of the Division. The closing was motivated by the economic cost associated with maintaining a separate office in Darien when most of the divisional operations were headquartered in Lexington. This relocation of functions also entailed cost-saving consolidations, so that the move resulted in a reduction in total employment within the Division.

---

* The Honorable Lawrence M. McKenna, United States District Judge for the Southern District of New York, sitting by designation.

In December 1986, Frederick Huber, executive vice president of the Division, and Jon Keene, director of industrial relations, made several personal visits to the Darien office in connection with their evaluation of the Division's overall personnel requirements in light of the impending Darien closure. At that time, the Darien office had three accounting and nine nonaccounting employees. Of the three accounting employees, Maresco and one other worker were over the age of forty, and therefore in the class of employees protected from discrimination by the ADEA. *See* 29 U.S.C. § 631 (1988 & Supp. I 1989). All of the nonaccounting personnel were also in the protected age group. On the other hand, there was only one employee over the age of forty in the approximately twenty-person accounting department of the Division's Lexington office.

During a December 1986 visit to Darien, Keene met with Maresco and informed him that he would not be asked to relocate. This decision was made by Huber and Susan Farnsworth, the Division's vice president of finance. Maresco's performance was considered satisfactory. The justification provided for Maresco's termination was the shutdown at Darien, and the consequent elimination of his position at that office. Maresco was provided with information concerning his pension benefits, severance pay, and continuation of medical benefits. In addition, Maresco received outplacement assistance, although these efforts ultimately proved unavailing.

Four Darien employees were offered the opportunity to transfer to the Lexington office. Of this group, three were nonaccounting employees over the age of forty, and one was an accountant, Byron Kabot, who was thirty-six. Unlike Maresco, Kabot, who subsequently declined the transfer and was terminated, was responsible for the preparation of sophisticated financial reports, and had both an undergraduate degree in accounting and a master's degree in business administration. The remaining two accounting employees, including Maresco, and six nonaccounting employees were terminated. No employees at the Lexington office were terminated in connection with the closure at Darien.

With the shutdown of the Darien office, accounting functions formerly performed there were absorbed by the accounting department at the Lexington office. No new employee was hired to take over Maresco's functions, which were absorbed by two accounting employees at Lexington; William F. Neeb, age thirty, and James A. Flaherty, age sixty. Upon completion of the consolidation, the Lexington accounting department consisted of twenty employees, only one of whom (Flaherty) was over the age of forty.

B. *The Proceedings Below.*

Maresco filed this action on January 17, 1989 after exhausting his administrative remedies before the Equal Employment Opportunity Commission. He initially proceeded *pro se*, but obtained counsel in March 1990. The case was referred to Magistrate Judge Naomi Reice Buchwald pursuant to 28 U.S.C. § 636(b)(1) (1988). In April 1989, Maresco served Evans with a document request seeking, *inter alia*, records dating from January 1, 1980 as to all new hires and separated employees at the Lexington and Nashua facilities. Evans objected to the request as overbroad, contending that the only relevant employment decisions were those stemming from the Darien shutdown. After a discovery conference, the magistrate judge ruled that Maresco was entitled to disclosure as to the job held, salary, age, experience, and (if applicable) reason for termination as to all persons entering or leaving accounting positions at the Lexington and Nashua offices from June 1986 to June 1987, the period immediately following the decision to close Darien. This ruling was confirmed by an order of the United States District Court for the Southern District of New York, Peter K. Leisure, *Judge,* entered August 30, 1989. The case was reassigned to District Judge John S. Martin, Jr., on July 6, 1990.

In further document discovery initiated after Maresco obtained counsel in 1990, Maresco sought data regarding all employ-

ees of the Division's Darien, Nashua, and Lexington offices. The purpose of this requested discovery was "to ascertain whether a discriminatory pattern and practice existed" with respect to employment decisions implementing the 1986 consolidation of the Division. The magistrate judge denied Maresco's request for additional discovery, "given the absence of a specific basis for additional discovery and the general irrelevance of information about noncomparable employees." The district court affirmed the magistrate judge's order in a memorandum opinion and order entered November 21, 1990.

After the close of discovery, Evans moved, and Maresco cross-moved, for summary judgment. Following oral argument, the district court granted summary judgment in favor of Evans, ruling that Maresco had failed to establish a triable issue of fact that: (1) his discharge occurred under circumstances that gave rise to an inference of discrimination based upon age; or (2) the reasons provided by Evans for Maresco's discharge were a pretext for discrimination.[1] The rationale of the court's decision was stated as follows:

> The undisputed evidence establishes that the decision to eliminate [Maresco's] position was based on legitimate business factors requiring that Evans close the Darien office and transfer its functions to other Evans locations. The record further shows that the decision not to offer plaintiff the opportunity to relocate was based solely on an analysis of the functions performed by each [Darien] employee and whether or not they could be easily absorbed by existing employees at other locations. Moreover, [Maresco's] claim that he was not offered the opportunity to relocate based upon his age is belied by the fact that four of the twelve employees from Darien who were offered the opportunity to relocate were over 40 years of age [and thus

within the ADEA-protected age group], one of whom was 61. In addition, [Maresco] was not replaced, but rather his responsibilities were assumed by existing employees Neeb and Flaherty stationed at [Lexington]. Flaherty was about 60 years old at the time the Darien office was closed.... These facts lend support to the conclusion that [Maresco's] age did not operate to exclude him from being offered relocation.

In reaching its decision, the district court refused to credit certain evidence presented by Maresco. Specifically, the court: (1) discounted as "unsubstantiated" and "unsupported" an affidavit by Maresco asserting that all the terminated Darien employees were over forty-five years old, and that Maresco "was performing the same corporate accounting and ledger related accounting work as is performed by the ... accountants in the Lexington office," *see supra* note 1; (2) concluded that a letter by Huber seeking to assist Maresco in finding employment with another company did not evidence age discrimination simply because it mentioned Maresco's age; (3) dismissed as speculative, and not based on personal knowledge, an affidavit by a former Grace employee that the Darien office was staffed primarily by older employees, whereas a "youth movement" predominated elsewhere throughout the Division; and (4) discounted statistical evidence comparing the twelve Darien employees with the twenty accounting employees at Lexington because "[t]here is no evidentiary basis for making such a grouping." The district court concluded "that a reduction-in-force and reorganization of staff constitutes a legitimate nondiscriminatory reason for employment related decisions," adequately accounting for Maresco's termination.

This appeal followed.

## DISCUSSION

We review *de novo* a district court decision granting summary judgment. *See*

---

1. Although most of the district court's opinion was addressed to these two propositions, and they were stated in the conclusion of the court's opinion as the bases for its ruling, the court also rejected as an "unsubstantiated claim[ ]" and "unsupported allegation[ ]" Maresco's assertion

"that he was performing the same corporate accounting and ledger related accounting work as is performed by the other accountants in the Lexington office;" i.e., that Maresco was qualified for a position in Lexington in the aftermath of the Darien closing.

*Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Taggart v. Time, Inc.,* 924 F.2d 43, 45–46 (2d Cir.1991). Summary judgment is proper only when there is no genuine issue of material fact remaining for trial and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). In this case, summary judgment in favor of Evans is inappropriate if the record reveals sufficient evidence to allow a rational jury to find in Maresco's favor. *See Binder,* 933 F.2d at 191; *Rosen v. Thornburgh,* 928 F.2d 528, 532–33 (2d Cir.1991); *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir. 1989). In our review of the record, we must resolve all ambiguities and inferences in support of Maresco's claim. *See Taggart,* 924 F.2d at 46; *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988). If the record is devoid of supporting evidence for Maresco's position, however, the grant of summary judgment must be affirmed. *See Binder,* 933 F.2d at 191.

The ADEA prohibits an employer from discharging an employee because of his age. 29 U.S.C. § 623(a)(1) (1988). This protection extends to employees who are at least forty years old. 29 U.S.C. § 631(a) (1988 & Supp. I 1989). It is not unlawful, however, for an employer to discharge an employee based on reasonable factors other than age. 29 U.S.C. § 623(f)(1) (1988).

Maresco's claim under the ADEA is governed by the burden-shifting analysis developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1988) *et seq. See Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 316 (2d Cir.1992); *Binder,* 933 F.2d at 191; *Taggart,* 924 F.2d at 46; *Montana,* 869 F.2d at 103. Accordingly, Maresco has the initial burden to establish a prima facie case of age discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Taggart,* 924 F.2d at 46. That is, he must substantiate that he "(1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge oc-

curred in circumstances giving rise to an inference of discrimination." *Rosen,* 928 F.2d at 532 (citing *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)); *see also Levin,* at 316; *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 83 (2d Cir.1990).

If Maresco satisfies this burden, Evans must then articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Taggart,* 924 F.2d at 46. Finally, should Evans meet this burden of production, the ultimate burden of persuasion rests upon Maresco to "prove discrimination 'either *directly* by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly* by showing that the employer's proffered explanation is unworthy of credence,'" i.e., pretextual. *Binder,* 933 F.2d at 192 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)) (emphasis added in *Binder).*

The district court based its grant of summary judgment primarily upon Maresco's putative failure to establish a triable issue of fact regarding one of the elements of a prima facie case, i.e., that his discharge occurred in circumstances giving rise to an inference of discrimination. The court also ruled, in the alternative, that Evans had articulated a nondiscriminatory reason for not transferring Maresco, and that there was no triable issue of fact that this reason was pretextual. We will discuss these issues in turn, after which we will address the questions regarding discovery and disparate impact liability that are also presented by this appeal.

*A. Prima Facie Case.*

■ To reiterate, in order to substantiate a prima facie case of unlawful discharge, Maresco must establish that he (1) was a member of the protected age group; (2) was qualified for the position to which he

claims entitlement; and (3) was discharged (4) under circumstances that gave rise to an inference of discrimination. Maresco, age sixty at the time of his discharge, clearly satisfies the first requirement. Similarly, there is no question that he was discharged. The primary issue is whether the discharge occurred under circumstances giving rise to an inference of discrimination. We will first consider briefly, however, the question whether he was qualified for the position that he sought, since the district court cast doubt upon Maresco's satisfaction of that requirement. *See supra* note 1.

In the context of a consolidation or reduction-in-force, where the employer is concededly engaged in a process that will legitimately result in the elimination of some positions, an employee must establish not that he was qualified for his previous position that has been eliminated, but rather that "he was qualified to assume another [available] position at the time of discharge." *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). There can be little doubt that Maresco clears this hurdle.

To a considerable extent, the issue concerns Maresco's ability to perform functions (transferred from him to two Lexington employees) that he had discharged to Evans' satisfaction for almost twenty years. Further, the statement filed by Maresco pursuant to Civil Rule 3(g) of the United States District Court for the Southern District of New York specified the job titles of the twenty continuing accounting employees at Lexington, which closely paralleled the titles of Maresco's current and prior positions at Evans, and explicitly said: "[Maresco] was, and is, qualified to perform almost all of the [listed job titles]." Because Evans did not respond to these statements,[2] Rule 3(g) requires that they

"be deemed to be admitted" for purposes of summary judgment. Nonetheless, "merely because a plaintiff testifies he was capable of handling one or two or many salaried jobs other than his own, yet was not relocated to such a job during the reduction, is not enough to show violation of the ADEA." *Williams*, 656 F.2d at 129.

We accordingly turn to the issue whether Maresco made an adequate showing to defeat summary judgment on the question whether his discharge occurred under circumstances that gave rise to an inference of discrimination. In this connection, the district court cited two cases, *Parcinski v. Outlet Co.*, 673 F.2d 34, 36 (2d Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983), and *Montaner v. Pan Am. World Airways, Inc.*, 30 Empl. Prac.Dec. (CCH) ¶ 33,183, 1982 WL 427 (S.D.N.Y.1982), for the proposition "that a reduction-in-force and reorganization of staff constitutes a legitimate nondiscriminatory reason for employment related decisions." This is undoubtedly true, but it is not the whole story.

Rather, "even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons." *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983) (citing *Williams*, 656 F.2d at 129–30); *see also Benjamin v. United Merchants & Mfrs., Inc.*, 873 F.2d 41, 43 (2d Cir.1989) (same); *Montana*, 869 F.2d at 103–06 (reversing summary judgment for employer in context of reduction-in-force or structural reorganization); *Bentley v. Stromberg–Carlson Corp.*, 638 F.2d 9, 10–12 (2d Cir.1981) (reversing judgment for employer and remanding for new trial in context of reduction-in-force).

Whether an analysis of the evidence proffered by Maresco yields an inference of discrimination depends largely upon the vantage from which this case is viewed.

---

**2.** Evans contends on appeal that it was not required to controvert these Rule 3(g) statements because they were made by Maresco only in opposition to Evans' Rule 3(g) statement in support of Evans' motion for summary judgment, and not in support of Maresco's cross-motion for summary judgment. This is a manifestly implausible reading of Maresco's Rule 3(g) statement, which made clear that these assertions were made "in support of [Maresco's] motion for summary judgment on the issue of liability *and* in opposition to [Evans'] motion for summary judgment (emphasis added)."

Evans argues, and the district court agreed, that the case involves a simple decision to close the Darien office. Under this scenario, it is natural to assume that the resulting reduction-in-force would be borne entirely by the Darien work force. According to this view, Evans reviewed the twelve Darien employees and decided to transfer only those with special qualifications or abilities to the Lexington office. Because the age distribution of those transferred (three of four were in the protected class) was approximately the same as that of those terminated, no inference of discrimination arises. *See Parcinski,* 673 F.2d at 37 ("The [ADEA] does not authorize the courts to judge the wisdom of a corporation's business decisions.").

Maresco posits a different theory of the case, contending that what occurred was a consolidation of the Darien and Lexington offices. Under this view, upon consolidation there were more employees than available positions, but because what transpired was a combination of existing functions and not an elimination of the Darien functions, there was no valid presumption that layoffs would come from the Darien office. Maresco contends that under these circumstances, the decisions to terminate certain employees should be tested for discrimination by reference to the combined work pool of the two offices. Viewed in this light, there were twenty-three accounting personnel in the work force. Three of the accounting employees were from the Darien office, two of whom were in the protected class. The Lexington office had twenty preconsolidation accounting employees, only one of whom was in the protected class. Pursuant to the terms of the consolidation, two of the three protected workers were terminated, while none of the twenty younger employees lost their jobs. The disproportionate termination of the employees in the protected class, Maresco concludes, is sufficient to give rise to an inference of discrimination.

We believe that this case should be analyzed substantially in accordance with the view suggested by Maresco. Initially, we are led to this view by the ample record evidence establishing that what occurred was not simply the elimination of the Darien office, but rather a consolidation into one location of the operations previously conducted at Darien and Lexington. Huber's deposition testimony included the following:

Q: Now, when you decided to shut down the Darien facility, was this, basically, a consolidation?

A: Yes.

. . . .

Q: Am I correct that the functions in the Darien office were being transferred to other offices? Is that correct?

A: Yes.

Q: In fact, the accounting functions were being transferred from Darien to Lexington; is that correct?

A: Yes.

Q: And the research and sales functions were also being transferred to other areas; is that correct?

A: Yes.

Q: So, basically, this move was a consolidation and a transfer of functions?

A: Yes.

Q: In other words, to get various functions under one roof, so to speak?

A: I think I should clarify that by saying that the abandonment of the Darien office was being undertaken for the good of the business and to leave a lot of duplication of efforts and costs, and it was accomplished by consolidating activities at other locations.

Q: But, these activities still continued; didn't they?

A: Yes.

Maresco's view of the case gains further support from our decision in *Montana.* In that case, the plaintiff was discharged from her position in New York City as regional personnel administrator. 869 F.2d at 102. The termination was predicated upon the consolidation of two regions' personnel administration functions at corporate headquarters in Rochester, New York as part of a broader corporate reorganization. *Id.* Her responsibilities were assumed by less experienced, lower paid, and

younger personnel already employed at the corporation's headquarters. *Id.* In reversing the district court's grant of summary judgment in favor of the defendant, we held that the circumstances of plaintiff's termination pursuant to the reorganization gave rise to an inference of discrimination sufficient to create a triable issue of fact. *Id.* at 105.

The implicit premise of our ruling in *Montana* was that the personnel functions of the New York City and Rochester locations should be viewed in tandem, rather than as isolated and separate units. So here, Maresco is entitled to a similar overview of the Darien and Lexington locations. It is true that the Darien office was completely closed in this case, whereas there was only a reduction of personnel at the New York City office in *Montana*. We do not regard this difference as critical, however, especially since Evans concededly regarded the restructuring as, *inter alia,* a consolidation of the Division's accounting functions in Lexington.

The only other case that might arguably be deemed comparable, *Parcinski,* involved an acquisition of a debt-ridden branch store and dismissal of its buying and merchandising staff by the acquiring entity, the defendant, since it handled this function at a central purchasing office for all its branch stores. 673 F.2d at 35. The discharged plaintiff thus had never been employed by the defendant. The case does not provide a persuasive analogy here.

The record in this case suggests that although Evans' decision to consolidate the Darien and Lexington offices was fairly based upon economic considerations, upon consolidation, Evans was faced with a larger pool of employees than available positions. In these circumstances, Evans was entitled to allocate the accounting positions in accordance with its business judgment, but could not do so on account of employees' ages.

The decision to terminate two of the three older accounting employees, and none of the twenty younger employees, presents circumstances which give rise to an inference sufficient to withstand a motion for summary judgment that age was impermissibly considered in allocating the post-consolidation employment positions. *See Montana,* 869 F.2d at 104 (inference of age discrimination may be established, *inter alia,* by circumstantial evidence); *Vaughn v. Mobil Oil Corp.,* 708 F.Supp. 595, 600–01 (S.D.N.Y.1989) (inference of discrimination may arise when employer locates new positions for younger, but not older, workers in implementing reorganization).

Our conclusion is buttressed by the familiar rule that summary judgment "is ordinarily inappropriate where [as here] intent and state of mind are at issue." *Montana,* 869 F.2d at 103 (citing *Meiri,* 759 F.2d at 998; *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984)); *see also Record Club of Am., Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1274 (2d Cir. 1989); *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559–60 (2d Cir.1989); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

Our ruling does not imply, however, that Evans could not give any weight to the different geographical locations of its Darien and Lexington employees in formulating its reorganized personnel structure. As stated earlier, § 623(f)(1) explicitly authorizes an employer to base employment decisions upon reasonable factors unrelated to age. It is certainly possible that such factors could come into play in any decision to consolidate offices and relocate personnel, including considerations of cost and administrative convenience. At this juncture, however, there is little or no evidence regarding such considerations, perhaps because Evans has resisted the consolidation theory of the case from the beginning of this action.

Finally, in the interest of facilitating disposition of the case upon remand, *see United States v. Borello,* 766 F.2d 46, 60 n. 23 (2d Cir.1985), we address Maresco's claim, contrary to the view expressed by the district court, that a memorandum sent by Huber to a prospective employer of Maresco which indicated Maresco's age constituted direct evidence of discrimination. We agree with the district court that this corre-

spondence, part of a modest outplacement effort on the part of Evans, was not probative of any discriminatory intent, but rather that its "purpose ... was to commend [Maresco's] work and explore other job possibilities for him." *Matson v. Cargill, Inc.,* 618 F.Supp. 278, 283 (D.Minn.1985). Maresco cites *Reed v. Signode Corp.,* 652 F.Supp. 129, 132 (D.Conn.1986), as bearing upon this issue, but we find that case, which dealt with summaries of employment interviews that uniformly began with a notation of the interviewee's age, inapposite.

### B. *Pretext.*

■ The district court granted Evans summary judgment on the alternative ground that Evans had proffered a legitimate, nondiscriminatory reason for Maresco's termination, the closing of the Darien office, and that Maresco had failed to establish that this reason was a pretext for discrimination. What we have already said regarding Maresco's establishment of a prima facie case, however, suffices to undercut the district court's ruling on the pretext issue, as well.

The court regarded Evans' stated economic rationale for the shutdown of the Darien office as a definitive refutation of Maresco's efforts both to establish a prima facie case and to show that Evans' purported basis for his termination was a pretext. We have concluded, however, that this analysis does not dispose of Maresco's case. Rather, the circumstances attendant upon Maresco's discharge permit an inference of age discrimination, and those same circumstances permit Maresco to establish a triable issue of fact in response to Evans' proffered explanation. Specifically, the discharge of two of the three older accounting employees at the Darien and Lexington offices, and none of the younger employees, provides a basis for Maresco either directly to challenge Evans' proffered explanation by showing that prohibited age discrimination is the more likely motivation, or indirectly to do so by establishing pretext. *See Binder,* 933 F.2d at 192; *see also Levin,* 960 F.2d at 317 (same facts that enabled plaintiff to establish a prima facie case adequate to withstand summary

judgment also made sufficient showing of pretext for that purpose); *Ramseur,* 865 F.2d at 465 (plaintiff not required to prove that employer's proffered reasons were false, but only that they were not the exclusive reasons and prohibited factor made a difference) (collecting cases).

### C. *Discovery.*

As noted earlier, in both his notice of appeal and brief on appeal Maresco has attacked a discovery ruling of the district court, confirming a prior discovery ruling by a magistrate judge, that rejected an application by Maresco for data regarding all employees of the Division's Darien, Nashua, and Lexington offices "to ascertain whether a discriminatory pattern and practice existed" with respect to the employment decisions implementing the consolidation of the Division. We ordinarily defer to the discretion of district courts regarding discovery matters. *See Hollander,* 895 F.2d at 84. On the other hand, the scope of discovery under Fed.R.Civ.P. 26(b) is very broad, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

In any event, this litigation has moved beyond the posture in which it stood when Maresco made his prior discovery requests, and his future applications will presumably be more sharply honed in the aftermath of this opinion. Taking into account our ruling that the Darien shutdown and consequent consolidation of the Division's accounting functions in Lexington should be considered from the perspective of a consolidation of the two offices, it is evident that Maresco should upon remand be permitted discovery at least as to all accounting personnel at the Lexington office, and not merely those hired or terminated during the period immediately following the shutdown of the Darien office. Anything further will lie within the discretion of the district court as the litigation progresses, guided by the overall perspective of a Dar-

ien–Lexington consolidation of the Division's accounting functions.

### D. *Disparate Impact.*

■ The disparate impact doctrine, developed under Title VII, is also applicable to cases under the ADEA. *See Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 117 (2d Cir.1991); *Lowe v. Commack Union Free Sch. Dist.,* 886 F.2d 1364, 1369 (2d Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990); *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). " 'Disparate impact' . . . results from the use of 'employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on [a protected group] and cannot be justified by business necessity.' " *Geller,* 635 F.2d at 1031 (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977)). In order to establish a prima facie case of age discrimination by showing disparate impact, Maresco must first identify a specific employment practice having an adverse impact upon members of the protected class, *see Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989); *Waisome v. Port Auth.,* 948 F.2d 1370, 1375 (2d Cir.1991), and then show causation, *see Wards Cove,* 490 U.S. at 656, 109 S.Ct. at 2124; i.e., "that the practice excluded him or her, as a member of a protected group, from a job or promotion opportunity." *Waisome,* 948 F.2d at 1375.

Both in his complaint, in the statistical evidence that was presented to the district court in his motion papers, and on appeal, Maresco has invoked the disparate impact doctrine in support of his case. He identifies Evans' decision that all terminations resulting from the divisional consolidation should come from the Darien office as the specific employment practice alleged to

have had disparate impact upon the ADEA-protected class of Evans employees.[3]

Both the disparate treatment and disparate impact theories can be invoked in a given case to establish ADEA liability, since they are simply alternative doctrinal premises for a statutory violation. *See Lowe,* 886 F.2d at 1369. We do not believe, however, that the disparate impact theory provides any significant analytical contribution in this case.

The facially neutral employment practice that Maresco invokes as the premise for disparate impact liability coalesces with the discharge which he claims to have constituted disparate treatment. Because " '[e]vidence of the employer's subjective intent to discriminate' " must be provided to support a claim of disparate treatment, *Lowe,* 886 F.2d at 1369 (quoting *Wards Cove,* 490 U.S. at 645, 109 S.Ct. at 2118), allowing the disparate impact doctrine to be invoked as Maresco proposes would simply provide a means to circumvent the subjective intent requirement in any disparate treatment case. Furthermore, the eight discharges that occurred in connection with the divisional consolidation at issue in this case are unlikely to provide an adequate basis for the sort of statistical analysis frequently employed in disparate impact cases. *See Lowe,* 886 F.2d at 1372.

### CONCLUSION

The judgment of the district court awarding summary judgment to Evans is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

**3.** Maresco also calls into question Evans' antecedent determination to terminate the employment of eight employees (whatever their age) in connection with the consolidation, but this is clearly a business decision with which we can have no legitimate concern. *See Parcinski,* 673 F.2d at 37.