**Ralph A. COOPER, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL HEALTH, Bryan F. Rudes and Richard A. Lallier, Defendants.**

No. 93–CV–1506 (FJS).

United States District Court, N.D. New York.

March 31, 1997.

---

Hinman, Straub, Pigors & Manning, P.C., Albany, NY (William F. Sheehan, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General, Albany, NY (Robert A. Siegfried, of counsel), for Defendants.

## Introduction

SCULLIN, District Judge.

This is an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., in which Plaintiff claims that his supervisors at the Regional Office of the New York State Office of Mental Health ("OMH"), Defendants Bryan F. Rudes and Richard A. Lallier, demoted him and subsequently terminated his employment on the basis of Plaintiff's age. Plaintiff pleads two causes of action in his complaint. In the first, Plaintiff contends that Defendants OMH, Rudes, and Lallier willfully terminated Plaintiff because of his age in violation of 29 U.S.C. § 623(a)(1) (Disparate Treatment). Second, Plaintiff contends that Defendants' policies and practices were predicated on impermissible age-based criteria which disparately impacted upon OMH staff over 60 years of age (Disparate Impact). The matter is before the Court on Defendants' motion for summary judgment.

## Background

Plaintiff was born on June 22, 1928. From January 1975 until May 6, 1992, Plaintiff was employed by defendant OMH and its predecessor, the Department of Mental Hygiene, in OMH's Central New York Regional Office ("Regional Office").

Beginning in 1980, Plaintiff was promoted to the title of Standards Compliance Analyst III ("SCA III"). As an SCA III, Cooper was primarily responsible for managing the activities of the Certification and Inspection Unit ("CIU") within the Regional Office. The

CIU was responsible for inspecting and certifying the licensed psychiatric programs for inpatient, outpatient, and community residence facilities in a twenty-county Central New York area. In 1988, Plaintiff was promoted to "Standards Compliance Analyst IV" ("SCA IV") at Salary Grade 29. The promotion brought about no immediate change in Plaintiff's responsibilities.

In 1989, the Regional Office was organized into five general departments, or areas, under the supervision of the Regional Director, titled "Planning," "Fiscal," "Operations," "Residential Services," and "Quality Assurance." Each of these departments was headed by a Director. Rudes Aff., Ex. F, "1989 Organization Chart." At this time, Plaintiff was given the title of Director of Quality Assurance, Quality Assurance Department, and his responsibilities were expanded.

As Director of Quality Assurance, Plaintiff had responsibility for the areas of "Regional Training," "Quality Assurance and Risk Management" and "Certification and Inspection." Rudes Aff., Ex. F, "1989 Organization Chart." While Plaintiff supervised the Certification and Inspection Unit ("CIU"), Alan Hambrecht managed the CIU's day-to-day operations.

In March 1990, Plaintiff suffered a serious heart attack that necessitated his absence from the office until October 1990. During Plaintiff's absence, Alan Hambrecht assumed the supervisory responsibilities for the CIU as well as the area of quality assurance and risk management. Upon Plaintiff's return to work in October, Plaintiff resumed his responsibilities, and Hambrecht returned to his subordinate role.

On September 9, 1991, a reorganization within the Regional Office was announced. The Regional Office's department names were changed to "Quality Improvement," "Community Housing," "Planning and Evaluation," "Administrative and Fiscal" and "Community Systems." Cooper Aff, Ex. F, "1991 Organization Chart." The Quality Improvement department encompassed what had been the Quality Assurance department, including the Certification and Inspection Unit. Linda Betts was named Director of Quality Improvement, and as such assumed all of the responsibilities Plaintiff had held as Director of Quality Assurance.[1] Plaintiff was assigned to the newly created position of Coordinator of Incident Review and Risk Management ("Coordinator"), directly under Ms. Betts' supervision. The reasons for the creation of this position, the reassignment of Mr. Cooper to fill it, and the duties which the position was designed to entail are disputed. As Coordinator, Plaintiff retained his title of SCA IV and salary grade 29, yet was relieved of all his former supervisory duties.

In January 1992, the OMH announced that there would be a statewide reduction in force, effective in May. By letter dated February 19, 1992, Plaintiff was notified that his position was targeted for layoff as a result of the reduction in force. Plaintiff was laid off at the close of business May 6, 1992.[2] At that time he was sixty-three years old.

### Discussion

Under Rule 56(c), summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). A genuine issue of material fact is one that a reasonable fact finder could decide in favor of either party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court is mindful that it must view the evidence in a light most favorable to the non-movant, drawing all reasonable inferences and resolving all ambiguities in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

1. Alan Hambrecht retained his former position, and now reports to Ms. Betts.

2. Plaintiff was the only employee of the Central New York Regional Office to be laid off at that time.

## I. Disparate Treatment

Plaintiff claims that his reassignment and subsequent layoff constituted a combined effort by Defendants to unlawfully terminate his employment on the basis of his age. Thus, his first cause of action is for disparate treatment.

The ADEA protects employees over 40 years of age from discharge by reason of their age. *See* 29 U.S.C. §§ 623, 631. ADEA disparate treatment claims are subject to the three-step burden shifting analysis developed in the employment discrimination context under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e et seq. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985); *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). Under this analysis, plaintiff must first establish a prima facie case of age discrimination. Upon a prima facie showing by plaintiff, the burden of production then shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse employment action at issue. If defendants meet their burden of production, the burden shifts back to the plaintiff to demonstrate that defendants' proffered non-discriminatory reason is mere pretext and that the adverse employment action was improperly motivated by plaintiff's age. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995). At the outset, it is important to note that

> [a] plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his or her job was eliminated as part of a corporate reorganization or reduction in workforce, for even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons.

**3.** During his employment at OMH, up until the reorganization, Plaintiff received meaningful promotions.

**4.** For example, Plaintiff alleges that he overheard Defendant Rudes state that Fred Ohdner, a Senior Program Analyst, who was sixty-four in 1991, was "too old to adapt to new ways." Plaintiff also alleges that he heard Rudes or Lallier make a reference to Therese LaLancette, who was born on July 3, 1926, to the effect that "Terry is even

*Cronin*, 46 F.3d at 204 (quoting *Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir. 1992)).

### A. Prima Facie Case

Plaintiff may make a prima facie showing of age discrimination by demonstrating that " '(1) he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.' " *Woroski*, 31 F.3d at 108 (quoting *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2d Cir.1993)). The showing required of Plaintiff as to these elements in order to survive Defendants' motion for summary judgment is " 'de minimis.' " *Cronin*, 46 F.3d at 203–04 (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994)).

The first three elements are not in dispute. At the time Plaintiff was discharged he was 63 years old. Defendants do not dispute that Plaintiff was qualified in his position as Director of Quality Assurance. Indeed, prior to his reassignment under the reorganization, Plaintiff's performance had been rated consistently "Highly Effective" by his superiors.[3] Cooper Aff. Exs. A, D. As to the last requirement, however, there are a number of factual allegations made by the Plaintiff which the Defendants dispute.

First, Plaintiff alleges that Defendants Rudes and Lallier made several age-related comments about him and two other older employees, Fred Ohdner and Therese LaLancette.[4] Cooper Aff. ¶¶ 22, 40. Second, Plaintiff contends that Defendants made statements and took employment actions with regard to Ohdner and LaLancette that support an inference of age discrimination.[5]

older than you, Ralph." Plaintiff further asserts that Rudes stated that Plaintiff was being "moved aside."

**5.** Plaintiff contends that Defendants told trim that they had explored ways to eliminate LaLancette because she was "even older than [Plaintiff]," either by forcing her to retire or by increasing her responsibility while keeping a close watch on her work for anything wrong. Cooper Aff. ¶ 26. Plaintiff contends that Ohdner was

Third, Plaintiff contends that the circumstances of his demotion a mere five months before he was laid off, and his replacement by a person who was twenty two years younger, justify an inference of age discrimination. While these factual allegations are disputed by the Defendants, the Court must view them in a light most favorable to the Plaintiff In doing so, the Court finds that the Plaintiff has alleged sufficient facts to support a prima facie case.

## B. Defendants' Non–Discriminatory Reason for the Adverse Action

As stated, once the Plaintiff has made a prima facie showing, the defendants must come forward and "offer a legitimate, non-discriminatory business rationale for its actions." *Woroski*, 31 F.3d at 108.

*Reorganization and Reassignment*

■ Defendants contend that the reorganization of the Regional Office was undertaken to allow the office to "better serve local providers of mental health services" in the face of significant changes in the field of mental health care. Rudes Reply Aff. ¶ 5.; Rudes Aff ¶ 7. Thus, according to Defendants, Plaintiff was reassigned as a part of the general reorganization of the Regional Office.

As part of the reorganization, Cooper was given a new assignment as Coordinator of Incident Review and Risk Management. Defendants allege that they:

> were concerned that not enough attention was being paid to the reporting and investigation of untoward incidents involving the mentally ill who receive care in community programs and non-OMH hospitals. OMH had, within the past few years, adopted new regulations regarding incident reporting. [Defendants] believed that there was an underreporting of incidents, and that this entire area of incident reporting and investigation should receive greater attention. [They] wanted one indi-

vidual to coordinate this area in the Regional Office. The individual would set up new procedures, provide training and information, develop databases and do trend analyses, and insure that serious incidents received proper attention. *Mr. Cooper was selected as the Coordinator of Incident Review and Risk Management because, one, the position involved significant responsibilities and had to go to a high-level employee, and two, Mr. Cooper's former area, inspection and certification, was running smoothly under Mr. Hambrecht. . . .*

Rudes Aff. ¶¶ 9–10 (emphasis supplied). However, Plaintiff asserts that he was told by Defendants Rudes and Lallier that he was reassigned because they were dissatisfied with various aspects of his performance as Director of Quality Assurance.[6]

*The Discharge of Plaintiff*

Defendants contend that thereafter, in January of 1992, they chose to eliminate Plaintiff's position of Coordinator of Incident Review and Risk Management for three reasons. First, in January 1992, the Regional Office was notified that it must eliminate one high-salaried position pursuant to a statewide reduction in force ("RIF"). Rudes Aff. ¶ 18. Elimination of the SCA IV title "[s]atisfied the Central Office requirement that the position be high salaried." Rudes Aff. ¶ 19. Second, in prior RIFs positions in the housing, planning, and operations areas had been eliminated. This was the first time that a position in quality assurance had been eliminated. Rudes Aff. ¶ 19. Third, while Plaintiff had been "highly effective" in his previous positions, he had not fulfilled Rudes' and Lallier's goals in his performance as the Coordinator of Incident Review and Risk Management. The involvement of the Regional Office in incident reporting and investigation had remained static during Plaintiff's four month tenure in the position. Thus, facing a reduction in service concomitant to

---

forced into retirement after being demoted because of his age.

6. Defendant Rudes asserts that, at the September 9, 1991 meeting at which Rudes and Lallier informed Plaintiff he was being reassigned,

"... Mr. Cooper became upset that he was being reassigned, .... In an adversarial tone he asked Mr. Lallier and me whether we had any problems with his performance. I mentioned a few issues...." Rudes Aff, Paragraph 10.

the mandated staff reduction, the Defendants allege that the incident reporting and investigation initiative was the least harmful sacrifice that the Regional Office could make. Rudes Aff. ¶ 20; Lallier Aff. ¶¶ 3–4; Rudes Reply Aff. ¶ 14(d).

The reasons Defendants offer for Plaintiff's reassignment and ultimate termination are on their face legitimate non-discriminatory business rationales for their actions. Indeed, Plaintiff acknowledges that Defendants have satisfied their burden of production with respect to this requirement. Therefore, the presumption of age discrimination does not attach. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

### C. Pretext and Discrimination

In light of the Defendants' proffered non-discriminatory reasons for plaintiff's discharge, the burden now shifts back to the Plaintiff. Plaintiff must now show there is a genuine issue of material fact as to the alleged disparate treatment based on age. The Second Circuit, in *Viola v. Philips Medical Systems of North America,* held that a plaintiff must show that, not withstanding defendant's proffered reasons, there is a material issue of fact as to whether or not the not the employee's age was the real reason for the discharge." *Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 716, 717 (2d Cir.1994) (citing *Woroski,* 31 F.3d at 108–09 (citing *Hicks,* 509 U.S. at 515–17, 113 S.Ct. at 2752)).

Because employers can easily point to a reduction in force as the rationale for any single termination, cases involving reductions in force often turn on the issue of pretext. *Viola,* 42 F.3d at 716; *see Regenbogen v. Mustille,* 908 F.Supp. 1101 (N.D.N.Y.1995). The Second Circuit Court of Appeals specifically addressed the plaintiff's burden when faced with a reduction in force defense in *Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196 (1995), *Gallo v. Prudential Residential Services,* 22 F.3d 1219 (2d Cir.1994), and *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100 (2d Cir.1989).

In *Cronin,* the Court of Appeals held that, although the plaintiff has the "ultimate burden of persuasion" to demonstrate that the challenged employment decision was the result of intentional discrimination;

... the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors.

*Cronin,* 46 F.3d at 196.

The Court of Appeals went on to state that, although the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that "the employer's proffered explanation is unworthy of credence," it may often be carried by reliance on the evidence comprising the prima facie case, without more. *Id.* (citing *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). In *Cronin,* the Court of Appeals found that a material issue of fact was raised precluding summary judgment where employer, during corporate reorganization and RIF, failed to submit employee's name for position for which he was better qualified than younger workers, whose names were submitted. *Id.* at 205–06.

In *Gallo,* the Court of Appeals found that where plaintiff's duties were for the most part transferred to a younger employee rather than eliminated in the RIF, and where she was not considered for a position for which she was clearly qualified, a material fact had been raised as to whether defendant's decision to discharge her because of a reduction in force was a pretext for intentional age discrimination. *Gallo* at 1221.

■ Applying the relevant case law to the present facts, the Court finds that Plaintiff has raised a material issue of fact sufficient to allow a reasonable fact finder to find that the Defendants were motivated by age discrimination. In the reorganization of September 1991, Plaintiff's former duties as Director of Quality Assurance were not eliminated, but were apparently transferred to a younger employee, Linda Betts. Plaintiff was also transferred into

the newly created position of Coordinator of Incident Review and Risk Management, a vaguely defined position which Plaintiff asserts was beneath his skill and compensation level. The explanations asserted by Defendants for his reassignment are unspecific and vague, ranging from some previously unexpressed dissatisfaction with Plaintiff's performance as Director of Quality Assurance, to the importance of the new role Plaintiff was to fulfill as the Coordinator of Incident Review and Risk Management. Additionally, after his termination, the Coordinator position, which Defendants allege was an important role in the new direction of the reorganized office, was apparently eliminated. The duties that had been assigned to Plaintiff in the Coordinator position were either dropped, or were assumed as a small portion of the duties of another, lower paid employee, one who had experienced performance problems in the past. The fact that the Coordinator position was not developed after Plaintiff's termination belies Defendants' assertion that Plaintiff's reassignment was a meaningful business decision, brought on by a change of direction in the office organization. In sum, the Court finds that the circumstances surrounding Plaintiff's reassignment from Director of Quality Assurance to Coordinator and his ultimate termination from that position, combine to create a material issue of fact as to whether the Defendants' proffered rationale of a reorganization and a subsequent reduction in force was a pretext for intentional age discrimination.[7] Therefore, Defendants' motion for summary judgment on this claim must be denied.

## II. Disparate Impact

Defendants also seek summary judgment on Plaintiff's disparate impact cause of action because they contend that the ADEA does not provide for disparate impact claims. Several recent decisions have cast substantial doubt on the viability of disparate impact causes of action under the ADEA. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617–18, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993) (Kennedy, J., concurring); *Equal Employment Opportunity Commission v. Francis W. Parker School,* 41 F.3d 1073 (7th Cir. 1994) (rejecting disparate impact claim under the ADEA based upon *Hazen* ); *Martincic v. Urban Redevelopment Authority,* 844 F.Supp. 1073 (W.D.Pa.1994) (same). The Second Circuit has not addressed the issue since the Supreme Court handed down the *Hazen* decision. *See Johnson v. New York,* 49 F.3d 75, 78 (2d Cir.1995) (Disparate treatment case noting "Supreme Court has not decided whether disparate impact theory of liability is available under ADEA"), but older cases hold that such a claim is viable. *See Maresco v. Evans Chemetics,* 964 F.2d 106, 115 (2d Cir.1992) ("The disparate impact doctrine . . . is also applicable to cases under the ADEA.")

---

7. Although Plaintiff also attempts to demonstrate Defendants' age-related animus with respect to other employees, Ohdner and LaLancette, undisputed facts belie this characterization, and those allegations did not contribute to the Court's determination. For example:

Although Ohdner faced layoff if he failed to retire, it is undisputed that OMH's Deputy Commissioner for Operations directed that Defendants select Ohdner for layoff because he was in a high-salaried position. In fact, Ohdner himself attributed his possible layoff to the OMH mandates that layoffs reach a certain monetary value. There is no evidence in the record that indicates that the directive by OMH's Central Office was motivated by Ohdner's age.

In addition, although Plaintiff produces evidence of Defendants' reference to Ms. LaLancette's age and their desire that she retire, there is insufficient evidence to create an implication of discriminatory animus. Defendants admit that they "did not believe that Ms. LaLancette was performing duties commensurate with her high-level ... position" and corresponding high salary (a Grade 29 equivalent). Rudes Aff. ¶ 28. Most importantly, there is no evidence in the record that Defendants took any adverse employment action against Ms. LaLancette other than increasing her responsibilities. *See* Rudes Aff. ¶ 28.

Plaintiff also points to Defendants' alleged Spring 1991 statement to the effect that "Terry [LaLancette] is even older than you, Ralph [Cooper]," in support of his argument of age discrimination in his reassignment and layoff Cooper Aff. ¶ 24. However, Plaintiff makes no claim that the reference concerned his employment status. He states merely that it was disturbing "because it contained a direct reference to [his age]." *Id.* Similarly, Plaintiff fails to draw any connection between Rudes' and Lallier's alleged statement that they were "moving [Cooper] aside" in the reorganization and Plaintiff's age.

**94**

Assuming that such a cause of action is viable, there is insufficient evidence in the record to justify its continuation. In order to establish a prima facie disparate impact claim under the ADEA, plaintiff "must identify a specific employment practice having an adverse impact upon members of the protected class, and then show causation, i.e., that the practice excluded him ... as a member of a protected group from a job or promotion opportunity." *Maresco*, 964 F.2d at 115 (citations and internal quotations omitted).

Plaintiff has failed to respond to Defendants' argument in favor of summary judgment on Plaintiff's disparate impact claim with legal argument or factual allegation. In this case, Plaintiff has failed to identify a specific employment practice having a disparate impact upon employees of the Regional Office of the OMH who are over 40 years of age. Thus, Defendants are entitled to summary judgment on this cause of action.

### Conclusion

Therefore, after carefully considering the record, the papers submitted by counsel, counsels' arguments, and the relevant law, it is hereby

ORDERED that defendants' motion for summary judgment is GRANTED in part and DENIED in part. It is further

ORDERED that Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's disparate impact claim and that claim is DISMISSED. It is further

ORDERED that Defendants' motion for summary judgment is DENIED with respect to Plaintiff's disparate treatment claim under the ADEA; and it is further

ORDERED that a telephone status conference is set for April 8, 1997 at 9:00 am, and Plaintiff is responsible for initiating the telephone conference.

IT IS SO ORDERED.