Luis R. ALONZO, Plaintiff,

v.

CHASE MANHATTAN BANK,
N.A., et al., Defendants.

No. 98 CIV. 2749(LAK).

United States District Court,
S.D. New York.

Oct. 26, 1999.

Anthony Chuwuka Ofodile, Brooklyn, NY, for Plaintiff.

Tara A. Griffin, Todd A. Gutfleisch, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an employment discrimination case in which plaintiff Luis R. Alonzo claims that he first was subjected to a hostile work environment on the basis of his Hispanic origin and then unlawfully terminated on the basis thereof, in retaliation for his complaints regarding the hostile work environment discrimination, or both. Defendant Chase Manhattan Bank ("Chase") has moved for summary judgment dismissing the complaint against it.[1] Although plaintiff obtained an extension of time within which to respond to the motion, no responsive papers have been filed. Accordingly, the averments set forth in Chase's Rule 56.1 Statement are deemed admitted.[2] Nevertheless, the fact that plaintiff has not responded to the motion does not mean that it should be granted automatically.[3] The question remains whether there is a genuine issue as to any material fact and, if not, whether Chase is entitled to judgment as a matter of law.

### Hostile Work Environment

The hostile work environment claim is based upon plaintiff's assertion that a supervisor by the name of Groesser repeatedly directed offensive remarks to plaintiff that reflected racial or ethnic animus. Although Groesser denies having done so, the portion of plaintiff's deposition placed before the Court by Chase contains plaintiff's account of the alleged remarks. As the facts must be taken in the light most favorable to plaintiff in resolving this motion, the Court assumes that Groesser made the remarks attributed to him.

Chase seeks to avoid liability for the alleged remarks by contending that certain of them are time barred, that some were not based on race or ethnicity, and in any case that the statements may not be imputed to Chase because plaintiff failed to avail himself of reasonable avenues for complaint.

■ Chase correctly points out that all but two or three of the allegedly offensive remarks occurred more than 300 days prior to the filing of plaintiff's EEOC charge[4] and argues that they therefore are not permissible subjects of relief.[5] It contends that once the time-barred incidents and those that were not unequivocally racial or national origin related are put aside, there simply is not enough left to go to a jury on the question whether plaintiff was subjected to a hostile work environment.

■ The attempt to carve off the alleged comments that were not explicitly racial or national origin related is misguided. Plaintiff is entitled on this motion to all inferences that reasonably may be drawn from the facts. Imputations of stupidity or other undesirable but facially neutral comments may take on a different coloration if they occur amidst explicitly racial and ethnic epithets. That is what is alleged here. A trier therefore reasonably might determine that all of Groessner's alleged comments manifested racial or national origin related bias.

■ The question whether the incidents that occurred more than 300 days prior to the filing of the EEO charge in April 1993,

---

1. Plaintiff voluntarily dismissed his claims against all of the individual defendants.

2. *See, e.g., United States v. All Right, Title and Interest in Real Property*, 77 F.3d 648, 657 (2d Cir.), *cert. denied*, 519 U.S. 816, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 111 (2d Cir.1992).

3. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996).

4. *See* Def. 56.1 St. ¶ 32.

5. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322 (2d Cir.1999).

i.e., the incidents that occurred prior to June 12, 1992, should be disregarded is a closer question. The continuing violations doctrine renders timely incidents that occurred more than 300 days prior to the filing of an EEO charge provided (1) the acts "within and without the limitations period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory employment practice chargeable to the employer," and (2) "the circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier."[6] While a jury well might resolve the question in Chase's favor, the Court is unwilling at this stage to conclude that no reasonable trier could find the elements of the continuing violations doctrine satisfied with respect to plaintiff's hostile work environment claim.

■ Finally, Chase contends that it may not be subjected to vicarious liability for Groesser's alleged actions.

*Burlington Indus., Inc. v. Ellerth*[7] and *Faragher v. Boca Raton*[8] make clear that an employer is vicariously liable for hostile work environment employment discrimination by a supervisor with immediate or higher authority over an employee unless no adverse employment action is taken and the employer establishes that (a) it took reasonable care to prevent and correct the harassment, and (b) plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.[9] Here, no alleged adverse employment action is asserted in the context of the hostile work environment claim.

Groesser was plaintiff's direct supervisor, one level removed. But while Chase argues that it satisfied the other elements of the defense by maintaining and disseminating a reasonable anti-discrimination policy and establishing avenues of complaint that plaintiff did not pursue, that is not enough on the facts of this case.

It is one thing for an employer to point, as does Chase, to an employee manual containing an anti–discrimination policy and setting out unpursued avenues of redress where the employee remains entirely supine. It may well be, in such circumstances, that the employer has acted entirely reasonably and that the employee has only him– or herself to blame for the employer's failure to deal with the alleged problem. After all, in such circumstances, the employer may be entirely unaware of the problem.[10] But that is not this case.

Here, according to his deposition, plaintiff in October 1992 went to Martin Hoffman, a senior vice president of Chase and head of plaintiff's department, and complained about Groesser's behavior, including his racial remarks.[11] Hoffman admits that there was a meeting, but denies that plaintiff raised the issue of discrimination. It is undisputed that Hoffman thereafter caused Groesser to take plaintiff to lunch, presumably in an effort to smooth over an obvious clash of personalities. Plaintiff claims that Groesser subsequently abused him, although he concedes that he never went back to Hoffman with further complaints.

---

6. *Johnson v. Nyack Hospital*, 891 F.Supp. 155, 165 (S.D.N.Y.1995), *aff'd without consideration of the point*, 86 F.3d 8 (2d Cir.1996); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997); *Morris v. Amal. Lithographers of Am., Local One*, 994 F.Supp. 161, 164 & n. 1 (S.D.N.Y.1998); *McKenney v. New York City Off–Track Betting Corp.*, 903 F.Supp. 619 (S.D.N.Y.1995).

7. 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

8. 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

9. *Burlington Indus., Inc.*, 118 S.Ct. at 2270. Although *Burlington* is a sexual harassment case, this standard was intended to apply to all inquiries into vicarious liability for supervisor harassment under Title VII, including race or national origin discrimination. *See Faragher*, 118 S.Ct. at 2283 n. 1.

10. *See Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812–13 (7th Cir.1999).

11. Alonzo Dep. 157.

It is common ground that recourse to Hoffman, as opposed to Chase's Human Resources Department, was not the prescribed route for complaints such as plaintiff's. Nevertheless, Hoffman was a senior official of the bank and was not involved in the alleged discrimination. If his response to plaintiff was not reasonable, the bank cannot escape liability on the basis of a printed statement in its employee handbook.[12]

The reasonableness of Hoffman's actions presents a close question. The evidence would permit a jury to find that Hoffman (a) did not bring the problem to the attention of Human Resources, (b) alerted Groesser to the fact that plaintiff had complained about him, (c) effectively told Groesser that the problem was his to handle by telling him to take plaintiff to lunch, and (d) did nothing more about the situation than later to ask plaintiff whether Groesser had taken him to lunch. The argument in favor of the reasonableness of his action is that he had every reason to think that plaintiff would have come back to him if the problem continued and indeed was led by plaintiff's failure to do so, particularly in response to his inquiry as to whether Groesser had taken him to lunch, to believe that the problem was resolved and that no further action was indicated. The argument the other way is that the risk that Groesser would retaliate against plaintiff for having gone over his head to Hoffman was inherent in the situation, but Hoffman nevertheless did virtually nothing to see that this did not occur.

The reasonableness of Hoffman's actions presents a genuine issue of material fact as to whether Chase failed to take reasonable care to prevent the alleged harassment. Chase's motion therefore must be denied insofar as it seeks dismissal of the hostile work environment claim.

*Termination*

■ Plaintiff's claim that he was terminated on the basis of his race and national origin or in retaliation for his protest about Groesser's behavior is another matter. It is undisputed that Chase merged with Manufacturers Hanover Trust Co., effective January 1, 1992, that the bank underwent a significant "downsizing" following the merger, that Hoffman's successor as head of the tax department told Lalak (Groesser's immediate supervisor) that he would have to terminate three or four employees, that Groesser told Pomarico (plaintiff's immediate supervisor) that he would have to select one employee for termination, that Pomarico recommended to Groesser that plaintiff be terminated, that Groesser relayed that recommendation to Lalak who passed it up the chain of command, and that Hoffman's successor and Chase's human resources department adopted the recommendation. Hence, the process by which plaintiff was selected for termination seems almost free of any reasonable charge of discrimination—but "almost" is not good enough on a motion for summary judgment.

Plaintiff's failure to respond to Chase's 56.1 Statement establishes all of the foregoing for purposes of this motion. Nevertheless, Chase acknowledges that the formal written recommendation which resulted in the ultimate decision to fire plaintiff was made by Groesser.[13] The assertion that the decision was made by Pomarico cannot be squared with the record. Hence, construing the record in the light most favorable to the plaintiff, it is impossible to say that no trier of fact reasonably could conclude that race, national origin or retaliatory motive was a factor in Groesser's decision to recommend plaintiff's termination.[14]

---

**12.** *Cf. Kotcher v. Rosa and Sullivan Appliance Center,* 957 F.2d 59, 64 (2d Cir.1992) (reporting sexual harassment to a supervisor at a sufficiently high level can be the basis for vicarious liability of the corporation even if plaintiff fails to utilize established procedures for reporting discrimination).

**13.** Def. 56.1 St. ¶ 71.

**14.** *See Crot v. Byrne,* 646 F.Supp. 1245, 1253 (N.D.Ill.1986) (denying summary judgment in

*Failure to Mitigate*

■ Finally, Chase seeks dismissal of plaintiff's front pay and back pay claims on the ground that the undisputed facts demonstrate that he has made no reasonable effort to find other employment.

Plaintiff was fired on April 27, 1993. Since then, he has sent out fewer than thirty resumes, contacted a few employment agencies, occasionally tried to network, reviewed the *New York Times* employment section, and secured two interviews and no job offers. In the year prior to his deposition, he sent out no resumes.[15]

Victims of employment discrimination must " 'use reasonable diligence in finding other suitable employment,' which need not be comparable to their previous positions."[16] Ordinarily, the employer bears the burden of showing that suitable work exists in the marketplace and that the plaintiff made no reasonable effort to secure it. *Id.* Where, however, the employee makes no reasonable effort to find work, the employer is relieved of the burden of demonstrating its existence. *Id.* at 53–54.

Plaintiff's deposition shows that his efforts to find work following his termination were quite limited. They were not, however, nearly as limited as the virtual inactivity that led the trial court in *Greenway* to conclude as a matter of law that no reasonable effort had been made.[17] While a jury quite possibly would conclude that plaintiff's efforts in this case were not reasonable, the Court cannot on this record hold that it would be obliged so to find.

*Conclusion*

This Court's task on a motion for summary judgment is not to forecast the winner at trial or weigh the evidence. While plaintiff's case may be thin, there are disputed issues of material fact. Defendant's motion for summary judgment dismissing the complaint therefore is denied. The Court nevertheless determines, pursuant to Fed.R.Civ.P. 56(d), that there is no genuine issue as to any of the facts set forth in Chase's Rule 56.1 Statement. Those facts are deemed established for purposes of this action.

SO ORDERED.

---

discrimination case where issue of fact existed regarding extent of defendant's involvement in plaintiff's termination).

**15.** Def. 56.1 St. ¶¶ 78, 82–86.

**16.** *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 53 (2d Cir.1998) (quoting *Ford Motor Co.*

*v. EEOC,* 458 U.S. 219, 231–32 & n. 15, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)).

**17.** *See Greenway v. Buffalo Hilton Hotel,* 951 F.Supp. 1039, 1060–61 (W.D.N.Y.1997), *modified,* 143 F.3d 47 (2d Cir.1998).